# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## 24-20109-CR-MARTINEZ/SANCHEZ
### CASE NO. _____

18 U.S.C. § 371
18 U.S.C. § 3238
18 U.S.C. § 981(a)(1)(C)

FILED BY_____ MP _____D.C.

**Mar 19, 2024**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

**UNITED STATES OF AMERICA**

**v.**

**ABRAHAM CIGARROA CERVANTES,**

    **Defendant.**

_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

### RELEVANT ENTITIES

1.      Stericycle, Inc. ("Stericycle") was a Delaware corporation headquartered in Lake Forest, Illinois. Stericycle ran an international waste management network, focused primarily on medical waste, industrial waste, maritime waste, and document destruction. Stericycle had a class of publicly traded securities that were registered with the United States Securities and Exchange Commission ("SEC") pursuant to Section 12(b) of the Securities Exchange Act of 1934 and were traded on the NASDAQ under the ticker "SRCL." Stericycle was an "issuer," as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-1(a) and 78m(b).

2.      Stericycle's Latin America division ("Stericycle LATAM") was responsible for overseeing and running the operations of Stericycle's subsidiaries in Mexico, Brazil, Argentina,

Chile, and Puerto Rico. Beginning at least in or about 2014, certain Stericycle LATAM leadership and staff were based in Miami, Florida.

**THE DEFENDANT AND RELEVANT INDIVIDUALS**

3. The defendant, **ABRAHAM CIGARROA CERVANTES**, was a Mexican citizen and was Finance Director for Stericycle LATAM. Based in Mexico, **CIGARROA CERVANTES** was a member of the Board of Managers for Stericycle's Mexican subsidiaries, Finance Director of the same, a member of the Stericycle Mexico Executive Committee, and a member of Stericycle's Foreign Corrupt Practices Act ("FCPA") Compliance Management Steering Committee. **CIGARROA CERVANTES** reported to the Senior Vice President of Stericycle's LATAM division in Miami, Florida, as well as senior Stericycle Inc. finance executives in Lake Forest, Illinois. **CIGARROA CERVANTES** was an employee of Stericycle Inc.'s subsidiary in Mexico and an agent of an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

4. Mauricio Gomez Baez was a Mexican citizen and resident of Miami, Florida, who worked for Stericycle as the Senior Vice President of Stericycle LATAM. His business responsibilities included oversight and management of Stericycle LATAM and certain Stericycle subsidiaries, including acquisitions, operations, finance, and sales. Gomez Baez reported to senior executives in Lake Forest, Illinois, during the relevant time period. Gomez Baez was an employee and agent of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

5. Medam S.A. de C.V., together with other affiliated entities (collectively, "Stericycle Mexico"), was a wholly owned subsidiary of Stericycle and headquartered in and around Mexico City, Mexico. Stericycle Mexico was under the direction and control of Stericycle,

and its books, records, and accounts were consolidated into the financial statements of Stericycle. During the relevant time period, Stericycle Mexico and its employees were agents of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

6.      "Mexico Vendors" were Mexican companies with which Stericycle Mexico entered into sham service contracts that were used to generate funds for bribe payments to Mexican government officials.

7.      "Mexico Official 1" was a Mexican government official working for the Mexican social security agency and was a "foreign official," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

8.      Stericycle Gestao Ambiental Ltda., together with other affiliated entities (collectively, "Stericycle Brazil"), was a wholly owned subsidiary of Stericycle and headquartered in Recife, Brazil. Stericycle Brazil was under the direction and control of Stericycle LATAM, and its books, records, and accounts were consolidated into the financial statements of Stericycle. During the relevant time period, Stericycle Brazil and its employees were agents of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

9.      Habitat Ecologico S.A., together with other affiliated entities (collectively, "Stericycle Argentina"), was a wholly owned subsidiary of Stericycle headquartered in Buenos Aires, Argentina. Stericycle Argentina was under the direction and control of Stericycle LATAM, and its books, records, and accounts were consolidated into the financial statements of Stericycle. During the relevant time period, Stericycle Argentina and its employees were agents of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

## COUNT 1
**Conspiracy to Violate the Foreign Corrupt Practices Act**
**(18 U.S.C. § 371)**

1.      The General Allegations Section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around December 2011 and continuing through in or around at least April 2016, in the Southern District of Florida, and elsewhere, the defendant,

**ABRAHAM CIGARROA CERVANTES,**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, confederate, and agree with Mauricio Gomez Baez, and other persons, known and unknown to the Grand Jury, to commit an offense against the United States, that is, being an agent of an issuer, to willfully and corruptly make use of the mails and means and instrumentalities of interstate commerce in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of a thing of value to a foreign official, and to a person while knowing that all and a portion of such money or thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (i) influencing an act and decision of such foreign official in that foreign official's official capacity; (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such foreign official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use that foreign official's influence with a foreign government and agencies and instrumentalities thereof to affect and influence any act and decision of such government and agencies and instrumentalities, in order to assist Stericycle and others in obtaining and retaining business for and with, and directing business to Stericycle and others, in violation of Title 15, United States Code, Section 78dd-1.

4

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for **ABRAHAM CIGARROA CERVANTES**, Mauricio Gomez Baez, and their co-conspirators to bribe Mexican, Brazilian, and Argentinian officials to obtain and retain contracts and other business advantages on behalf of and for the benefit of Stericycle and its subsidiaries and agents, and to falsify and cause to be falsified books, records, and accounts required, in reasonable detail, to accurately and fairly reflect the transactions and dispositions of the assets of Stericycle.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Southern District of Florida and elsewhere:

4.      **ABRAHAM CIGARROA CERVANTES**, Mauricio Gomez Baez, and other Stericycle employees and agents knowingly and willfully conspired to use, and did use, the mails and means and instrumentalities of interstate commerce to corruptly offer, promise to pay, authorize the payment of, and pay, approximately $10.5 million in bribes to Mexican, Brazilian, and Argentinian government officials, in order to influence those officials in their official capacities and to secure an improper advantage to assist Stericycle, and others, in obtaining government contracts for medical waste collection.

5.      **ABRAHAM CIGARROA CERVANTES** and other Stericycle employees and agents expanded Stericycle LATAM through acquisitions and implemented and maintained similar methods of bribe payments in Mexico, Brazil, and Argentina. **CIGARROA CERVANTES** and his co-conspirators made and caused to be made hundreds of bribe payments to foreign officials employed by government agencies and instrumentalities in Mexico, Brazil, and

Argentina to obtain and retain business advantages and to direct business to Stericycle.

6.     **ABRAHAM CIGARROA CERVANTES** participated in a scheme by which employees at Stericycle Mexico, Stericycle Brazil, and Stericycle Argentina made bribe payments, typically in cash, and calculated the amount of the bribes as a percentage of underlying contract payments made by or owing from a government customer. In each of the three jurisdictions, **CIGARROA CERVANTES** and his co-conspirators tracked the bribe payments on spreadsheets, including spreadsheets created and maintained by **CIGARROA CERVANTES**, using codes words such as "IP."

7.     **ABRAHAM CIGARROA CERVANTES** maintained spreadsheets tracking "IP" bribe payments to foreign officials and the corresponding payments to Mexican Vendors with the false invoice justifications.

8.     In order to conceal the corrupt payments, **ABRAHAM CIGARROA CERVANTES** and others maintained false books, records, and accounts that did not accurately and fairly reflect the transactions and dispositions of Stericycle's assets, causing Stericycle to falsely record bribe payments as legitimate expenses in its consolidated books, records, and accounts. **CIGARROA CERVANTES** also submitted and maintained falsified Sarbanes-Oxley certifications and business unit representation letters falsely attesting that the books, records, and accounts were accurate.

9.     **ABRAHAM CIGARROA CERVANTES** along with Stericycle executives, employees, and agents utilized the means and instrumentalities of interstate commerce, including the use of wires in the Southern District of Florida.

10.    Stericycle executives, employees, and agents, while in the Southern District of Florida and elsewhere, communicated through various means, including by discussing in person,

making bribe payments to foreign officials in Mexico, Brazil, and Argentina.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the purposes thereof, the defendant and his co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1. On or about January 12, 2011, **ABRAHAM CIGARROA CERVANTES** emailed Mauricio Gomez Baez, providing a spreadsheet of the "Top 20 SG&A expenses by country." In the email, **CIGARROA CERVANTES** wrote that the spreadsheet included comparisons of the SG&A numbers with and without "IP," and provided a breakdown of the amounts of the disguised bribe payments by jurisdiction, including Mexico, Brazil, and Argentina.

2. In or around April 2012 the Stericycle Mexico Executive Committee — including **ABRAHAM CIGARROA CERVANTES** and Mauricio Gomez Baez — met and discussed a breakdown of "advanced payments," including "IP" totaling 577,557 pesos.

3. On or about January 17, 2013, a Stericycle Mexico employee emailed **ABRAHAM CIGARROA CERVANTES** and Mauricio Gomez Baez, attaching a spreadsheet "Invoices IP [] DIC.12" that contained bribe payments to Mexican officials and fake vendor payments, and describing the spreadsheet as a "reference file" that included the "monthly amount summary" and an analysis of the "concepts we use in order to sustain the operation."

4. In or around September 2013, the Stericycle Mexico Executive Committee — including **ABRAHAM CIGARROA CERVANTES** and Mauricio Gomez Baez — met and discussed a breakdown of "advanced payments," including "IP" totaling 1,768,866 pesos.

5. On or about October 1, 2014, a senior manager at Stericycle Mexico emailed Mauricio Gomez Baez, stating "[t]he dinner with [Mexican Official 1] from [the Mexican social

security agency] was postponed for tomorrow, he has been in communication supporting the process of the current contracts and apparently, he is orienting us properly."

6.      In or around January 2015, while in the Southern District of Florida, Mauricio Gomez Baez and Stericycle Brazil's country manager met with another Stericycle LATAM employee to discuss Brazil's financial performance, which included a line-item expense for bribe payments in Brazil.

7.      On or about March 10, 2015, **ABRAHAM CIGARROA CERVANTES** caused a payment of 58,208.80 pesos (approximately $3,766) to a Mexico Vendor.

8.      On or about March 10, 2015, **ABRAHAM CIGARROA CERVANTES**, having obtained funds from a Mexico Vendor, delivered cash totaling approximately 52,000 pesos (approximately $3,364) to Mexico Official 1.

9.      On or about July 27, 2015, while in the Southern District of Florida, **ABRAHAM CIGARROA CERVANTES** emailed Mexico Official 1 inquiring about a regional tender issued by the Mexico social security agency.

10.     On or about July 28, 2015, while in the Southern District of Florida, **ABRAHAM CIGARROA CERVANTES** received an email to his personal U.S.-based email account from Mexico Official 1 in response to his inquiry about the regional tender issued by the Mexico social security agency.

11.     On or about August 11, 2015, **ABRAHAM CIGARROA CERVANTES** caused the payment of 107,563.53 pesos (approximately $6,594) to a Mexico Vendor.

12.     On or about August 11, 2015, **ABRAHAM CIGARROA CERVANTES**, having obtained funds from a Mexico Vendor, delivered cash totaling approximately 102,000 pesos (approximately $6,253) to Mexico Official 1.

13.     On or about January 8, 2016, a Stericycle Brazil executive emailed Mauricio Gomez Baez a version of a spreadsheet tracking bribe payments, stating by using a euphemism for bribe payments "[a]s per our conversation, please find attached the spreadsheet detailing the expenses with the debt collection services for 2014 and 2015."

14.     On or about January 11, 2016, **ABRAHAM CIGARROA CERVANTES** emailed Stericycle Vice President of Corporate Finance in Lake Forest, Illinois a quarterly Sarbanes-Oxley certification that **CIGARROA CERVANTES** had signed that falsely stated, in sum and substance, that he was not aware of any material event or potential material event — defined to include a violation or alleged violation of any applicable law or regulation — in the Stericycle Mexico business for the quarter ending December 31, 2015.

15.     On or about April 5, 2016, **ABRAHAM CIGARROA CERVANTES**, in his capacity as Finance Director, Mexico emailed the Stericycle Director of Corporate Reporting in Lake Forest, Illinois, a quarterly Sarbanes-Oxley certification that **CIGARROA CERVANTES** had signed that falsely did not disclose any material event or potential material event — defined to include a violation or alleged violation of any applicable law or regulation — in the Stericycle Mexico business for the quarter ending March 31, 2016.

16.     On or about April 14, 2016, **ABRAHAM CIGARROA CERVANTES** emailed false and fraudulent invoices for four of the Mexico Vendors to Stericycle Mexico finance employees seeking payment totaling approximately 56,000 pesos (approximately $3,208) in order to generate cash to pay bribes to Mexican officials.

17.     On or about April 25, 26, and 28, 2016, **ABRAHAM CIGARROA CERVANTES** caused a Stericycle Mexico accounting employee to enter into Stericycle's general ledger payments to the Mexico Vendors, resulting from the false and fraudulent invoices e-mailed by

**CIGARROA CERVANTES** on or about April 14, 2016, for services the Mexico Vendors did not, in fact, provide.

18.     On or about April 26, 2016, **ABRAHAM CIGARROA CERVANTES**, in his capacity as Financial Controller for Stericycle Mexico, emailed a Stericycle Senior Accountant for Consolidation and Reporting, in Lake Forest, Illinois, a quarterly Business Unit Representation that **CIGARROA CERVANTES** had signed that falsely stated that he had "no knowledge of actual or suspected fraud, bribery, or corrupt payments affecting the business Unit" for the quarter ending March 31, 2016.

All in violation of Title 18, United States Code, Section 371.

### COUNT 2
**Conspiracy to Violate the Accounting Provisions of the FCPA**
**(18 U.S.C. § 371)**

1.     The General Allegations Section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around December 2014 and continuing through in or around at least April 2016, in an offense begun and committed out of the jurisdiction of any particular State or district, the defendant,

**ABRAHAM CIGARROA CERVANTES,**

who will be first brought to and arrested in the United States, did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, confederate, and agree with Mauricio Gomez Baez, and other persons, known and unknown to the Grand Jury, to commit an offense against the United States, that is, to knowingly and willfully falsify, and cause to be falsified, books, records, and accounts required to, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of Stericycle, an issuer organized under the laws of

the United States, in violation of Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5), and 78ff(a), and Title 18, United States Code, Section 3238.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the purposes thereof, the defendant and his co-conspirators begun and committed at least one of the following overt acts, among others:

1.     On or about December 31, 2014, Mauricio Gomez Baez signed a quarterly Sarbanes-Oxley certification that falsely stated, in sum and substance, that Gomez Baez was not aware of any material event or potential material event – defined to include a "violation or alleged violation of any applicable law or regulation" in the Stericycle LATAM business during the relevant period. This certification failed to disclose, among other things, the bribe payments to various foreign officials in Brazil, Mexico, and Argentina, and the existence of false books, records, and accounts related to the concealment of those payments.

2.     On or about December 31, 2015, **ABRAHAM CIGARROA CERVANTES** signed a quarterly Sarbanes-Oxley certification that falsely stated, in sum and substance, that **CIGARROA CERVANTES** was not aware of any material event or potential material event – defined to include a "violation or alleged violation of any applicable law or regulation" in the Stericycle LATAM business during the relevant period. This certification failed to disclose, among other things, the bribe payments to various foreign officials in Brazil, Mexico, and Argentina, and the existence of false books, records, and accounts related to the concealment of those payments.

3.     On or about January 11, 2016, **ABRAHAM CIGARROA CERVANTES** emailed Stericycle Vice President of Corporate Finance in Lake Forest, Illinois a quarterly Sarbanes-Oxley certification that **CIGARROA CERVANTES** had signed that falsely stated, in sum and substance, that he was not aware of any material event or potential material event — defined to

include a violation or alleged violation of any applicable law or regulation — in the Stericycle Mexico business for the quarter ending December 31, 2015.

4.      On or about March 31, 2016, **ABRAHAM CIGARROA CERVANTES** signed a quarterly Sarbanes-Oxley certification that falsely stated, in sum and substance, that **CIGARROA CERVANTES** was not aware of any material event or potential material event – defined to include a "violation or alleged violation of any applicable law or regulation" in the Stericycle LATAM business during the relevant period. This certification failed to disclose, among other things, the bribe payments to various foreign officials in Brazil, Mexico, and Argentina, and the existence of false books, records, and accounts related to the concealment of those payments.

5.      On or about April 5, 2016, **ABRAHAM CIGARROA CERVANTES**, in his capacity as Finance Director, Mexico emailed the Stericycle Director of Corporate Reporting in Lake Forest, Illinois, a quarterly Sarbanes-Oxley certification that **CIGARROA CERVANTES** had signed that falsely did not disclose any material event or potential material event — defined to include a violation or alleged violation of any applicable law or regulation — in the Stericycle Mexico business for the quarter ending March 31, 2016.

6.      On or about April 14, 2016, **ABRAHAM CIGARROA CERVANTES** emailed false and fraudulent invoices for four of the Mexico Vendors to Stericycle Mexico finance employees seeking payment totaling approximately 56,000 pesos (approximately $3,208) in order to generate cash to pay bribes to Mexican officials.

7.      On or about April 25, 26, and 28, 2016, **ABRAHAM CIGARROA CERVANTES** caused a Stericycle Mexico accounting employee to enter into Stericycle's general ledger payments to the Mexico Vendors, resulting from the false and fraudulent invoices e-mailed by **CIGARROA CERVANTES** on or about April 14, 2016, for services the Mexico Vendors did

not, in fact, provide.

8.     On or about April 26, 2016, **ABRAHAM CIGARROA CERVANTES**, in his capacity as Financial Controller for Stericycle Mexico, emailed a Stericycle Senior Accountant for Consolidation and Reporting, in Lake Forest, Illinois, a quarterly Business Unit Representation that **CIGARROA CERVANTES** had signed that falsely stated that he had "no knowledge of actual or suspected fraud, bribery, or corrupt payments affecting the business Unit" for the quarter ending March 31, 2016.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C))

1.     The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ABRAHAM CIGARROA CERVANTES**, has an interest.

2.     Upon conviction of a violation of, or a conspiracy to violate, Title 15, United States Code, Sections 78dd-1, 78m(b)(2)(A), 78m(b)(5), and/or 78ff(a), as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been commingled with other property which cannot be divided without

difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title

21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set

forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code,

Section 2461(c).

A TRUE BILL

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

MANOLO REBOSO
ASSISTANT UNITED STATES ATTORNEY

JIL SIMON
PAUL A. HAYDEN
TRIAL ATTORNEYS

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

CASE NO.: <u>24-20109-CR-MARTINEZ/SANCHEZ</u>

**v.**

ABRAHAM CIGARROA CERVANTES,

**CERTIFICATE OF TRIAL ATTORNEY**

_____/

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
   ☒ Miami   ☐ Key West   ☐ FTP
   ☐ FTL   ☐ WPB

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3.   Interpreter: (Yes or No) <u>Yes</u>
   List language and/or dialect: <u>Spanish</u>_____

4.   This case will take _____ days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

   (Check only one)         (Check only one)
   I   ☐ 0 to 5 days       ☐ Petty
   II   ☒ 6 to 10 days     ☐ Minor
   III  ☐ 11 to 20 days   ☐ Misdemeanor
   IV  ☐ 21 to 60 days   ☒ Felony
   V   ☐ 61 days and over

6.   Has this case been previously filed in this District Court? (Yes or No) _____
   If yes, Judge _____ Case No. _____

7.   Has a complaint been filed in this matter? (Yes or No) _____
   If yes, Magistrate Case No. _____

8.   Does this case relate to a previously filed matter in this District Court? (Yes or No) _____
   If yes, Judge <u>Moore and Judge Williams</u>   Case No. <u>21-CR-20156-KMM;24-CR-20050-KMW</u>

9.   Defendant(s) in federal custody as of _____

10.  Defendant(s) in state custody as of _____

11.  Rule 20 from the _____ District of _____

12.  Is this a potential death penalty case? (Yes or No) _____

13.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) <u>No</u>

14.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) <u>No</u>

15.  Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? <u>No</u>

16.  Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? <u>No</u>

By: _____
       Manelo Reboso
       Assistant United States Attorney
       FL Bar No.   75397

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name: ABRAHAM CIGARROA CERVANTES**

**Case No:**

Count #: 1

Conspiracy to Violate the Foreign Corrupt Practices Act

Title 18, United States Code, Section 371

**\*Max. Term of Imprisonment:** Five (5) Years' Imprisonment
**\*Mandatory Min. Term of Imprisonment (if applicable):** N/A
**\*Max. Supervised Release:** Three (3) Years
**\*Max. Fine:** $250,000/$100.00 Special Assessment

Count #: 2

Conspiracy to Violate the Accounting Provisions of the Foreign Corrupt Practices Act

Title 18, United States Code, Section 371

**\*Max. Term of Imprisonment:** Five (5) Years' Imprisonment
**\*Mandatory Min. Term of Imprisonment (if applicable):** N/A
**\*Max. Supervised Release:** Three (3) Years
**\*Max. Fine:** $250,000/$100.00 Special Assessment